**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Andreea Melissa Olteanu, | Case No. 2:23-cv-02006-RFB-DJA |
| Plaintiff, | |
| v. | **Order** |
| Louis Schneider, et al., | |
| Defendants. | |

Under 28 U.S.C. § 1915 Plaintiff is proceeding in this action *pro se* and has requested authority to proceed *in forma pauperis*. (ECF No. 1). Plaintiff also submitted a complaint. (ECF Nos. 1-1 and 3). Because the Court finds that Plaintiff's application is complete, it grants her application to proceed *in forma pauperis*. The Court also screens Plaintiff's complaint.

**I.      *In forma pauperis* application.**

Plaintiff filed the affidavit required by § 1915(a). (ECF No. 1). Plaintiff has shown an inability to prepay fees and costs or give security for them. Specifically, Plaintiff asserts that her expenses exceed her income, that her home is in foreclosure, and that she is disabled. Accordingly, the request to proceed *in forma pauperis* will be granted under 28 U.S.C. § 1915(a). The Court will now review Plaintiff's complaint.

**II.     Screening the complaint.**

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the

1    complaint that the deficiencies could not be cured by amendment.  *See Cato v. United States*, 70

2    F.3d 1103, 1106 (9th Cir. 1995).

3            Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a

4    complaint for failure to state a claim upon which relief can be granted.  Review under Rule

5    12(b)(6) is essentially a ruling on a question of law.  *See Chappel v. Lab. Corp. of Am.*, 232 F.3d

6    719, 723 (9th Cir. 2000).  A properly pled complaint must provide a short and plain statement of

7    the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp.*

8    *v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require detailed factual

9    allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the

10   elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v.*

11   *Allain*, 478 U.S. 265, 286 (1986)).  The court must accept as true all well-pled factual allegations

12   contained in the complaint, but the same requirement does not apply to legal conclusions.  *Iqbal*,

13   556 U.S. at 679.  Mere recitals of the elements of a cause of action, supported only by conclusory

14   allegations, do not suffice.  *Id.* at 678.  Where the claims in the complaint have not crossed the

15   line from conceivable to plausible, the complaint should be dismissed.  *Twombly*, 550 U.S. at 570.

16   Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings

17   drafted by lawyers.  *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal

18   construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

19           Federal courts are courts of limited jurisdiction and possess only that power authorized by

20   the Constitution and statute.  *See Rasul v. Bush*, 542 U.S. 466, 489 (2004).  Under 28 U.S.C.

21   § 1331, federal courts have original jurisdiction over "all civil actions arising under the

22   Constitution, laws, or treaties of the United States."  Cases "arise under" federal law either when

23   federal law creates the cause of action or where the vindication of a right under state law

24   necessarily turns on the construction of federal law.  *Republican Party of Guam v. Gutierrez*, 277

25   F.3d 1086, 1088-89 (9th Cir. 2002).  Whether federal-question jurisdiction exists is based on the

26   "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a

27   federal question is presented on the face of the plaintiff's properly pleaded complaint."

28   *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Under 28 U.S.C. § 1332(a), federal

district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different states." Generally speaking, diversity jurisdiction exists only where there is "complete diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

**A.    Plaintiff's allegations.**

Plaintiff has filed two complaints, the one attached to her application to proceed *in forma pauperis* and a second complaint. (ECF Nos. 1-1, 3). Because amended complaints supersede any prior complaints, the Court will only consider Plaintiff's second complaint. That second complaint appears to be based on the same underlying facts as the original, but adds defendants.

Plaintiff sues seventeen Defendants:

(1) Louis Schneider, Esq.;

(2) Christopher Ford, employed with the Law Firm of Ford and Friedman, LLC;

(3) Anthony Smith, employed with the Law Firm of Ford and Friedman, LLC;

(4) Clark County Coroner;

(5) the Henderson Police Department ("HPD");

(6) J. Diaz, an HPD officer;

(7) B. Eric, an HPD officer;

(8) S. Ulibarri, an HPD officer;

(9) Engine 95 of the HPD;

(10) Rescue 84 of the HPD;

(11) Sgt. Ramos, an HPD sergeant;

(12) M. Condratovich, an HPD officer;

(13) A Nelson, an HPD officer;

(14) N Calvano, an HPD officer;

(15) J Self, a "CSA" detective;

(16) P Farrel, an HPD officer; and

(17) P. Chavez.[1]

(ECF No. 3 at 1-2).

Plaintiff lists the following claims in the caption of her complaint:

(1) RICO wrongful death;

(2) RICO violation of section 1983 rights;

(3) RICO grand larceny;

(4) RICO fraud;

(5) RICO embezzlement;

(6) RICO reckless endangerment;

(7) RICO obstruction of justice;

(8) Malicious prosecution;

(9) RICO wire fraud;

(10) RICO mail fraud; and

(11) Legal malpractice.

(*Id.* at 1).

Plaintiff's complaint also appears to allege the following claims:

(1) Illegal search and seizure in violation of the Fourth Amendment;

(2) Unlawful arrest in violation of the Fourth Amendment.[2]

Plaintiff alleges that the HPD, Schneider, Ford, and the Clark County Coroner schemed to murder Plaintiff's husband on December 17, 2022 and frame Plaintiff for the murder so that they could sell her property at auction.  (*Id.* at 1-17).  Plaintiff asserts that her husband was murdered by a hammer, but the HPD improperly documented evidence of the murder and failed to perform certain forensic tests on the evidence, while the Coroner wrongfully reported that her husband

---

[1] Plaintiff lists a badge number for this Defendant and the note "corner."  It appears Plaintiff may be alleging that this individual works for the Clark County Coroner.

[2] Plaintiff also mentions "financial damage" in violation of the Eighth Amendment and illegal search and seizure in violation of the First Amendment in her complaint.  But these claims are not cognizable under the Constitutional Amendments Plaintiff references.

1   died of cardiomyopathy.  (*Id.* at 2-3).  Plaintiff asserts that, when responding to the murder, the

2   HPD also took the opportunity to search her home for items unrelated to the murder and seize

3   those items.  (*Id.* at 7).  Plaintiff alleges that HPD turned these items over to the Clark County

4   Public Administrator, which kept an inventory of them.  (*Id.* at 7-8).[3]  Plaintiff alleges that the

5   Clark County Public Administrator later auctioned off her property.  (*Id.* at 7-8, 12).  Plaintiff also

6   asserts that, the auction was arranged so that when she turned up to reclaim her property, she

7   would be arrested, presumably under two fabricated bench warrants.  (*Id.* at 8-9).

8         Plaintiff asserts that Schnieder and Ford were involved in the scheme because they helped

9   the HPD prepare a file by providing documents and information from Plaintiff's and her

10  husband's family court case in which Schnieder represented Plaintiff.  (*Id.* at 9-10).  Plaintiff

11  alleges that Schnieder eventually withdrew his representation of her after she would not agree to

12  let his private investigator frame her husband for a DUI.  (*Id.*).  The day after he withdrew his

13  representation, Plaintiff alleges that a bench warrant issued for her arrest on a fabricated

14  misdemeanor charge.  (*Id.*).  Plaintiff also alleges that on prior occasions, Ford and Schnieder

15  "illegally attempted to sell [her] property."  (*Id*. at 10-11).  Plaintiff adds that Ford and Schnieder

16  have "colluded with real estate agents in blocking [her] property from being rented…" (*Id.* at

17  13).  Plaintiff claims that she has obtained evidence that her husband was murdered but that the

18  HPD will not update the death report with that evidence.  (*Id.* at 14).

19             1.   Racketeer Influenced and Corrupt Organizations ("RICO") Act.[4]

20        To state a civil RICO claim under 18 U.S.C. § 1964(c), a plaintiff must allege

21  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as

22

23  [3] After the murder, Plaintiff asserts that her home was burglarized and vandalized, presumably
    because the HPD did not secure it.  (ECF No. 1-1 at 8).  But it is unclear if Plaintiff is alleging a
24  cause of action, like negligence, related to this fact.

25  [4] Plaintiff alleges nine "RICO" causes of action.  These appear to be Plaintiff's assertions of the
    predicate acts underlying her RICO claim.  However, only plaintiff's claims for "RICO wrongful
26  death," and "RICO obstruction of justice" are cognizable as predicate acts as alleged.  *See* 18
    U.S.C. § 1961(1)(A) (listing an act involving murder as a predicate act); *see* 18 U.S.C.
27  § 1961(1)(B) (listing 18 U.S.C. § 1510—obstruction of criminal investigations—and 18 U.S.C.
    § 1511—obstruction of state or local law enforcement—as predicate acts).
28

1  'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Abcarian v. Levine*,

2  972 F.3d 1019, 1027 (9th Cir. 2020).  Under the statute, an "'enterprise' includes any individual,

3  partnership, corporation, association, or other legal entity, and any union or group of individuals

4  associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  The offenses constituting

5  "racketeering activity" are contained in 18 U.S.C. § 1961(1).  "In order to constitute a 'pattern,'

6  there must be at least two acts of racketeering activity within ten years of one another." *Turner v.*

7  *Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citing 18 U.S.C. § 1961(5)).

8      "The RICO statute provides a cause of action to any person 'injured in his business or

9  property by reason of' a violation of the statute." *Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d

10  648, 651 (9th Cir. 2019) (quoting 18 U.S.C. § 1964(c)).  To have standing to bring a civil RICO

11  claim, a plaintiff must "show that the racketeering activity was both a but-for cause and a

12  proximate cause of his injury." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866,

13

14  ———————————————

15  Plaintiff's claims for "RICO violation of Section 1983 rights," "RICO grand larceny," "RICO fraud," "RICO embezzlement," "RICO reckless endangerment," "RICO wire fraud," and "RICO mail fraud," all fail as outlined below.

16  42 U.S.C. § 1983 is not a source of substantive rights, but rather a method of vindicating federal

17  rights elsewhere conferred. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  Similarly, reckless endangerment is commonly understood as a factor in enhancing criminal sentences. *See*

18  *U.S. v. Young*, 33 F.3d 31, 32 (9th Cir. 1994).

19  Grand larceny and embezzlement describe federal crimes arising under 18 U.S.C. § 641, but neither are listed as "racketeering activity" under 18 U.S.C. § 1961. *See Murphy v. JP Morgan*

20  *Chase*, No. 2:15-cv-0725-KJM-GG-PS, 2015 WL 2235882, at *2, 4 (E.D. Cal. May 11, 2015) (explaining that grand larceny arises under 18 U.S.C. § 641); *see Retanan v. California Dept. of*

21  *Correction and Rehabilitation*, No. 1:11-cv-01629-GBC-PC, 2012 WL 1833888, at *5 (D. Nev.

22  May 18, 2012) (explaining that embezzlement arises under 18 U.S.C. § 641).

23  Plaintiff alleges no facts related to wire communications or mail communications such that her allegations could support claims for wire or mail fraud as predicate acts underlying her RICO

24  claim. *See* 18 U.S.C. § 1341 (mail fraud); *see* 18 U.S.C. § 1343 (wire fraud).

25  Plaintiff also alleges no facts that would support a cause of action for fraud. *See Nevada Power Co. v. Monsanto Co.*, 891 F.Supp. 1406, 1413 (D. Nev. 1995) (explaining that under Nevada law,

26  the elements of fraud are a false representation by the defendant, defendant's knowledge that the representation was false, defendant's intention to induce the plaintiff to act or refrain from acting

27  in reliance on the misrepresentation, plaintiff's justifiable reliance on the misrepresentation, and damage to the plaintiff resulting from the reliance).  And "fraud" in general is not listed as a

28  predicate act under 18 U.S.C. § 1961(1).

873 (9th Cir. 2010).  "Proximate causation for RICO purposes requires 'some direct relation between the injury asserted and the injurious conduct alleged.'"  *Id.* (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  However, while RICO liability may extend to a suit against municipal officers sued in their personal capacities, municipal *entities* are not subject to liability under RICO.  *Abcarian*, 972 F.3d at 1027.

Here, Plaintiff brings her RICO claim against the HPD, the Coroner, Schneider, and Ford. Plaintiff's RICO claims against HPD and the Coroner fail because both are municipal entities. And Plaintiff does not specify if she sues any HPD officers or Clark County Coroner employees in their personal capacities.  Nor does she allege which officers or employees were involved in her allegations or how.  While Schneider and Ford are individuals potentially subject to RICO liability, Plaintiff does not allege sufficient facts to establish but-for cause between their actions and her damages.  Plaintiff alleges that Schneider and Ford arranged the murder of her husband and were involved in "fabricating" bench warrants for Plaintiff's arrest for domestic battery, which could constitute predicate acts under 18 U.S.C. § 1961.  *See* 18 U.S.C. § 1961(1)(A) (listing an act involving murder as a predicate act); *see* 18 U.S.C. § 1961(1)(B) (listing 18 U.S.C. § 1510—obstruction of criminal investigations—and 18 U.S.C. § 1511—obstruction of state or local law enforcement—as predicate acts).  But it is unclear if this activity was the but-for cause of Plaintiff losing her property at auction because Plaintiff's timeline and certain of her facts are unclear.  She alleges that Schneider and Ford caused bench warrants to be issued.  But it is unclear when those warrants were issued and if she was arrested under those warrants.  And Plaintiff has not alleged that her property was actually auctioned off or when that happened. Ultimately, Plaintiff has not alleged that the racketeering activity she describes was the but-for cause of her losing her property.  The Court thus dismisses Plaintiff's RICO claim without prejudice and with leave to amend.

2.   <u>Malicious prosecution.</u>

In Nevada, the elements of a malicious-prosecution claim are: "(1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings [in favor of the accused]; and (4) damage."  *LaMantia v. Redisi*, 38 P.3d 877, 879

(Nev. 2002) (citation omitted); *see also Dutt v. Kremp*, 894 P.2d 354, 357 (Nev. 1995), *overruled on other grounds by LaMantia*, 38 P.3d 877.  Plaintiff has not alleged sufficient facts to state a claim for malicious prosecution.  She has not alleged that there were any criminal proceedings against her other than the unspecified fabricated bench warrants she references.  And she has not alleged malice, that the subsequent criminal proceedings terminated in her favor, or damages related to the criminal proceedings.  The Court thus dismisses Plaintiff's malicious prosecution claim without prejudice and with leave to amend.

### 3.  Legal malpractice.

To prevail on a legal malpractice claim, a plaintiff must prove the following elements: (1) an attorney-client relationship; (2) a duty owed by the attorney to the client "to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity possess in exercising and performing the tasks which they undertake"; (3) a breach of that duty; (4) "the breach being the proximate cause of the client's damages"; and (5) that the plaintiff suffered actual loss or damage as a result of the negligence.  *Day v. Zubel*, 922 P.2d 536, 538 (Nev. 1996).

Plaintiff has not alleged a cognizable claim for legal malpractice.  She alleges that she had an attorney-client relationship with Schnieder in regard to a family court case and settlement agreement between her and her husband in 2021.  As a result of that relationship, Schneider owed her a duty to use skill, prudence, and diligence.  Plaintiff alleges that Schneider breached that duty by hiring a private investigator who suggested that Plaintiff frame her husband for a DUI.  When Plaintiff told the private investigator that she would not engage in that framing, Schneider withdrew his representation.  Plaintiff asserts that a day later, a bench warrant was issued for her arrest on a fabricated misdemeanor charge, presumably connected to Schneider.  However, other than the warrant, which she does not sufficiently connect to Schneider, Plaintiff does not allege that she suffered any loss or damage as a result of Schneider's actions.  While she alleges that Schneider was later involved in murdering her husband and colluding with HPD, she does not allege that this was related to his representation of her such that it could form the basis of a legal malpractice claim.  The Court thus denies Plaintiff's legal malpractice claim without prejudice and with leave to amend.

1

    4.    <u>Fourth Amendment illegal search and seizure and unlawful arrest.</u>

2         The Fourth Amendment guarantees a citizen's right to be free from "unreasonable

3    searches and seizures." U.S. Const. Amend. IV.  "[T]he ultimate touchstone of the Fourth

4    Amendment is 'reasonableness,'" and thus, "[w]here a search is undertaken by law enforcement

5    officials to discover evidence of criminal wrongdoing, ... reasonableness generally requires the

6    obtaining of a judicial warrant." *Riley v. California*, 573 U.S. 373, 381-82 (2014) (second

7    alteration in original) (internal quotation marks and citations omitted).  "A claim for unlawful

8    arrest is 'cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest

9    was without probable cause or other justification.'" *Perez–Morciglio v. Las Vegas Metro. Police*

10    *Dep't*, 820 F.Supp.2d 1111, 1120 (D. Nev. 2011) (quoting *Dubner v. City & Cnty. of S.F.*, 266

11    F.3d 959, 964–65 (9th Cir. 2001)).  "An arrest generally must be supported by probable cause."

12    *Id.* (citing *Dubner*, 266 F.3d at 964–65).  Probable cause exists if, at the moment of arrest,

13    "'under the totality of the circumstances known to the arresting officers (or within the knowledge

14    of the other officers at the scene), a prudent person would believe the suspect had committed a

15    crime.'" *Id* at 1121 (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 471–72 (9th Cir.2007)

16    (quotation omitted)).

17         42 U.S.C. § 1983 creates a path for the private enforcement of substantive rights created

18    by the Constitution and Federal statutes.  *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

19    To state a claim for a Constitutional violation under 42 U.S.C. § 1983, a plaintiff must allege the

20    violation of a right secured by the Constitution and the laws of the United States and must show

21    that the alleged deprivation was committed by a person acting under the color of law.  *West v.*

22    *Atkins*, 487 U.S. 42, 48-49 (1988).  However, municipal entities—as opposed to individual state

23    actors—may not be held liable simply because they employ a person who allegedly violates the

24    constitution.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Instead, a plaintiff

25    seeking to impose liability on a municipality under § 1983 must identify a municipal policy or

26    custom that caused the plaintiff's injury.  *Id.*

27         Plaintiff has not alleged a cognizable claim for illegal search and seizure.  Plaintiff alleges

28    that the HPD searched her home beyond what was reasonable to investigate her husband's death

and that they did so without a warrant.  Specifically, Plaintiff alleges that officers went through her purses and boxes in various closets along with old checkbooks that would have taken officers hours to find.  Plaintiff also alleges that doors to the master bedroom, home office, and her son's bedroom were forced open.  However, Plaintiff has not alleged this claim against any specific officers, but the HPD generally.  And because HPD is a municipal entity, it cannot be liable under § 1983 just because it employs officers who violated Plaintiff's constitutional rights.  Instead, Plaintiff must allege that HPD had a municipal policy or custom that caused her injury.  Because she does not, her illegal search and seizure claim fails.

Plaintiff has not alleged a cognizable claim for unlawful arrest because she does not allege whether or when she was arrested.  Plaintiff alleges that fabricated bench warrants were issued for her arrest.  But she does not state that she was arrested under the authority of those warrants or allege when that happened.  The Court thus dismisses Plaintiff's claims for illegal search and seizure and unlawful arrest without prejudice and with leave to amend.

**IT IS THEREFORE ORDERED** that Plaintiff's application to proceed *in forma pauperis* (ECF No. 1) is **granted.**  Plaintiff shall not be required to pre-pay the filing fee. Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of a security therefor.  This order granting leave to proceed *in forma pauperis* shall not extend to the issuance and/or service of subpoenas at government expense.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to file Plaintiff's complaint (ECF No. 3) on the docket but shall not issue summons.

**IT IS FURTHER ORDERED** that Plaintiff's complaint is dismissed without prejudice and with leave to amend.

**IT IS FURTHER ORDERED** that Plaintiff shall have until **April 11, 2024** to file an amended complaint to the extent she believes she can correct the noted deficiencies.  If Plaintiff chooses to amend the complaint, Plaintiff is informed that the Court cannot refer to a prior pleading (i.e., the original complaint) to make the amended complaint complete.  This is because,

generally, an amended complaint supersedes the original complaint.  Local Rule 15-1(a) requires that an amended complaint be complete without reference to any prior pleading.  Once a plaintiff files an amended complaint, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each Defendant must be sufficiently alleged.  **Failure to comply with this order may result in the recommended dismissal of this case.**

DATED: March 12, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE